No. 25,193.

THE CITY OF INDEPENDENCE, *Plaintiff*, v. N. A. TURNER, as Auditor, etc., et al., *Defendant.*

### SYLLABUS BY THE COURT.

MANDAMUS—*Maturing Bonded Indebtedness of City of Second Class May Be Refunded—Refunding Bonds Entitled to Registration.* Under chapter 138 of the laws of 1915, a city of the second class having more than twenty-five hundred inhabitants may refund its maturing as well as its matured bonded indebtedness and such refunding bonds when issued are entitled to registration.

Original proceeding in mandamus. Opinion filed November 10, 1923. Writ allowed.

*Chas. D. Shukers,* city attorney, for the plaintiff.

· *C. B. Griffith,* attorney-general, and *W. C. Ralston,* assistant attorney-general, for the defendant.

The opinion of the court was delivered by

JOHNSTON, C. J.:   The city of Independence, a city of the second class, brought this action to compel N. A. Turner, as auditor of state, to register certain refunding bonds issued by the city to take up and pay sewer bonds originally issued by the city in 1909 in the amount of $40,000, bearing interest at the rate of five per cent per annum, and which were purchased by the state school fund commission and are now held as a part of the school fund. In the original bonds was a reservation that the city could call in and pay the bonds at any time ten years after the date thereof. When the ten years had elapsed and on April 19, 1923, the city passed a resolution declaring that it exercised the option provided for in the original bonds to mature and pay them by the issuance of refunding bonds to the same amount, bearing interest at four and three-fourths per cent. When the refunding bonds were issued and presented to the auditor he refused to register them. He held and contends that only matured bonds may be issued under the statutes providing for the issuance of refunding bonds and that the exercise of the option mentioned did not operate to mature the original bonds. It is insisted by the defendant that the only way the city can redeem the bonds now held by the state is to bring in the cash and tender it to the state fiscal agency. The bonds sought to be matured and paid

provided for the payment in thirty years and do not mature until 1939 unless it can be accomplished through the exercise of the option, and it is contended that only matured bonds can be refunded and that as those offered would not mature until 1939 they were issued without statutory authority and registration of them was rightly rejected by the defendant.

Does the statute relating to the refunding of city bonds of this character authorize the refunding of only matured bonds or may those that are maturing and are payable at the option of the city be refunded? The governing act treats of the refunding of maturing obligations as well as of those which have matured. The title of the act under which the refunding steps were taken is entitled: "An Act to enable cities of second class to refund their bonded indebtedness." The first section of the act provided that:

"Any city of the second class having a population of more than 2,500 inhabitants of the state of Kansas is hereby authorized to take up and refund its bonds issued on account of any subscription to the capital stock of any railroad company, or for any public improvement, or for any other purpose, including all accrued interest thereon." (Laws 1915, ch. 138, § 1.)

It will be observed that this section by its terms authorizes the refunding of all bonds, making no distinction between bonds that are due and those to become due. The doubt of the auditor as to the validity of the refunding bonds arises from the confusion of terms used in the second section of the act. It provided:

"That when any city shall determine to refund its outstanding maturing obligations, under the provisions of this act, it shall ascertain the amount of said matured and maturing bonds which have not been paid, and shall thereupon cause an ordinance to be enacted providing for the issuing of bonds sufficient to refund all its matured bonded indebtedness and interest thereon, and in such ordinance shall prescribe the denomination of said bonds to be issued; the time of payment; and the interest same shall bear; the city clerk shall keep a record of all bonds issued, and of all bonds paid thereby; and no such bonds issued under the provisions of this act, or proceeds derived from the sale thereof shall be delivered or paid to the holder of any matured bonds, until such matured bonds duly cancelled, have been filed with the clerk of said city." (§ 2.)

It will be noted that the first part of this section speaks only of maturing obligations, while further along it refers to both matured and maturing obligations and then in a later part relating to the passage of an ordinance for the refunding of the bonds, refers only to matured bonds. As the title and first section of the act relates to and embraces the refunding of all outstanding bonds and the

second treats of both maturing and matured bonds, it is evident that both were within the contemplation of the legislature and that its intention was to provide for the refunding of both matured and maturing obligations. The confusion of the terms used does not becloud that purpose. From the use of the expression, "that when any city shall determine to refund its outstanding maturing obligations, under the provisions of this act," there is as much ground for saying that only maturing obligations were within the intent of the legislature as to claim that other expressions were intended to limit the application of the act to those that had matured. We think there is an ellipsis in the causes which mention only matured bonds, an unintentional omission of the term maturing, and upon a reading of the whole act the intention of the legislature is clear and that effect should be given to its manifest intention to include both.

Where the purpose of the legislature is plain, the misuse or omission of a word or a phrase will not defeat the evident purpose and courts are warranted in supplying words which are consistent with the context of the act and the manifest intention of the legislature. In *Coney v. City of Topeka,* 96 Kan. 46, 149 Pac. 689, it is said:

"It is familiar law that legislative enactments are not any more than any other documents to be defeated on account of errors, mistakes or omissions. Where one word or figure has been erroneously used for another or a word omitted, and the context affords the means of correction, the proper word or figure will be deemed substituted or supplied. This is only making the naked letter of the statute yield to its obvious intent."

See, also, *Tatlow v. Bacon,* 101 Kan. 26, 165 Pac. 835. Again, if the act was interpreted as to apply only to matured bonds it must still be held that those sought to be refunded had been matured by the city through the exercise of the option definitely written into the original bonds and should be treated as matured obligations. The bonds as we have seen contained a stipulation reserving to the city the right to call in and pay the bonds at any time after ten years from the date thereof. The bonds were rightly called, provision was made for their payment and thereafter the bonds might rightly be classed as matured obligations.

We conclude that the city was entitled to the relief asked and therefore judgment must go in its favor.