175 So. 365

### SOUTHERN INDUSTRIAL INSTITUTE
### v. LEE.
### 3 Div. 218.

Supreme Court of Alabama.
June 17, 1937.

A. A. Carmichael, Atty. Gen., and Walter J. Knabe and Wm. H. Loeb, Asst. Attys. Gen., for appellee.

Jacob A. Walker, of Opelika, for appellant.

GARDNER, Justice.

In 1927 (General Acts 1927, p. 506), the Legislature appropriated the sum of $50,000 for the construction and equipment of buildings for the Southern Industrial Institute at Camp Hill, Ala., an educational institution incorporated by special act. General Acts 1900–01, p. 848. The appropriation was made available only upon approval of the Governor, and subject to his judgment as to the condition of the treasury.

Following the approval of the act and on December 3, 1929, the Governor, the petition avers, wrote the president of the Institute (to so designate it for brevity) to the effect that he had every reason to say about $25,000 of this appropriation would be released sometime near the 15th of January. Thereupon the Institute let a contract for the construction of a new administration building; the walls being erected and a temporary roof completed before the enactment of what is known as the Budget and Financial Control Act. General Acts (Ex.Sess.) 1932, p. 35.

During the construction the sum of $10,000 of the appropriation was released by the Governor, and applied on the cost of construction. The Institute, in reliance upon the letter of the Governor, to which reference has been made, advanced from its general funds, which would otherwise have been used in the payment of salaries of its teachers and other general expenses in the education of its pupils, the additional sum of $16,300.

The petition discloses that the remaining sum of the appropriation is needed, and has never been paid, but the Governor has approved the request for $5, with the evident intent of permitting the Institute to test in the courts the validity of the remainder of this appropriation.

The state insists the appropriation was repealed by the Budget Act, cited above, and places reliance upon section 10 of the act, which reads as follows:

"Repeal of Definite, Indefinite and Contingent Permanent Appropriations: All permanent appropriations, definite, indefinite, and contingent in amount, except those provided in the Constitution and those provided in existing statutes in payment of interest on indebtedness arising out of the disposition of lands donated to State institutions by the Federal Congress, heretofore made to any department, institution, bureau, board, commission or other State agency, are hereby repealed as of the close of the fiscal year ending September 30, 1932; Provided that this section shall not become effective until the Legislature enacts current annual appropriations, including per capita appropriations for all eleemosynary and correctional institutions and the Alabama School for Deaf and Blind, for definite amounts that may be expended (after allotments by the Governor as provided for in Section 20) by such departments, institutions, bureaus, boards, commissions and other State agencies for the three remaining fiscal years of the current quadrennium ending on the 30th of September 1933, 1934, and 1935."

The Institute lays stress upon the word "permanent," preceding and qualifying the word appropriations, and argues that this particular appropriation to the Institute was not a permanent appropriation within the meaning of said section 10, and is therefore not repealed. We think there is merit in this contention.

We are acquainted, as a matter of common knowledge, with the history of the Budget Act, the large outstanding floating debt of the state, the insufficiency of funds in the treasury, and appropriations far in excess of the state's revenues. The act was designed to make the state operate within its income. To that end, there was vested in the Governor direct and effective supervision over all of the state's financial affairs. See section 2 of the act, and Abramson v. Hard, 229 Ala. 2, 155 So. 590.

The appropriation here in question is in harmony with that theory, as its release is wholly dependent upon the will of the Governor, who, under the Budget Act, has direct supervision over the state's finances.

The word "permanent" has a well-defined meaning, as follows: "Continuing in the same state or without essential change; durable, fixed, stable: opposed to temporary." The Standard Dictionary and Webster's New International Dictionary (2d Ed., unabridged). The word "continuing," in the above definition, indicates such character of continuing appropriation referred to in 59 Corpus Juris, 257; and the reference in this same section to current annual appropriations adds some force to this suggestion.

Perhaps an analogous illustration is to be found in Pierce v. City of Huntsville, 185 Ala. 490, 64 So. 301, 304, followed in Holley v. Brunson, 221 Ala. 572, 130 So. 173, wherein paving ordinances were considered in reference to the general statute requiring certain formalities as to the passage of ordinances of permanent operation. The holding was that the paving ordinances were not embraced therein, for the reason it was merely local and special, and when its end is once accomplished, it is no longer a rule of conduct, but "its interest is historical and evidential only," the opinion concluding: "It is then consigned to the limbo of things which have served their purpose."

So it is in the instant case. The appropriation is local and special—the erection of a building—and when the building is completed and the payment made, the act is at an end. It has served its purpose and becomes· "historical and evidential only."

There is ·nothing in the act to indicate that the lawmakers did not intend the word "permanent" to be given its ordinary and usual meaning (State v. Praetorians, 226 Ala. 259, 146 So. 411), and the courts have no right to ignore the ·express language used, but should construe the whole act, and each clause as standing in pari materia (Wages v. State, 225 Ala. 2, 141 So. 707; 18 Alabama Digest, Statutes, p. 125; 59 Corpus Juris, 993). In Michael v. State, 163 Ala. 425, 50 So. 929, 933, the court quoted approvingly the statement that "generally speaking, a permanent statute * * * is one which is understood to continue in force till its repeal". The act in question is not of that character. When it has served its purpose, it is at an end without further legislative action.

Whether the setting of section 22 in the act could be taken as indicating an intention that its provisions should have reference to future appropriations only, as. held in the court below, we need not stop to inquire, as we entertain the view the appropriation act in question was not a "permanent" one within the meaning of section

10, and, therefore, was not repealed. This section (section 22), it is to be observed, provides in part that "appropriations for the purchase of land or the erection of buildings or new construction shall continue in force until the attainment of the object or the completion of the work for which such appropriations are made," and we think, in any event, this evinces a legislative policy that appropriations of this character should not lapse, but that the work should be completed.

The mere fact that the lawmaking body subsequently passed an appropriation bill for the purpose of paying the balance due on appropriations to certain educational institutions (General Acts [Ex.Sess.] 1932, p. 298) does not suffice as determinative of legislative intent as to the use of the word "permanent" in section 10. Perhaps for the purpose of immediate finance, or out of abundance of precaution, or it may be these institutions had completed their improvements and the indebtedness outstanding. Whatever motivated these acts, it cannot be given so controlling effect as the state here urges upon us.

We have previously referred to the fact that this appropriation is expressly subject to the Governor's approval. He it is who supervises the state's finances, and there was no inconsistency whatever in the Legislature leaving this particular appropriation unaffected by the Budget Act, as the treasury of the state was as well guarded the one way as the other, and by the same high authority. And until released by the Governor, it is not a proper claim for presentation to the comptroller, and, therefore, is not such an "unpaid appropriation" as is referred to in article 23 of the Constitution Amendments (see Gen.Acts 1933, Ex.Sess., p. 196).

We therefore conclude that the appropriation for the erection of buildings for the Institute was not a permanent appropriation within the meaning of section 10 of the Budget Act, and was of consequence not repealed, but is yet in full force and effect.

The ruling of the trial court was not in accord with these views, and the judgment will therefore stand reversed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.